IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SALVATORE CANDELA | : | |
| Petitioner | : | |
| v | : | Civil Action No. WMN-05-1665 |
| DOUGLAS DEVENYNS | : | |
| Respondent | : | |

o0o

## MEMORANDUM

The above-captioned Petition for Writ of Habeas Corpus was filed on June 17, 2005 pursuant to 28 U.S.C. § 2241.  Petitioner seeks to challenge his continued detention pending his removal from this country.[1].  Paper No. 1.  A response to the show cause order issued in this case has been filed.  For the reasons set forth more fully below, the petition shall be denied.

The instant petition is the second challenge filed by Petitioner regarding his continued detention pending removal.  *See Candela v. ICE*, Civil No. WMN-05-281 (D. Md. 2005).  The first petition was denied by this court after finding that Petitioner's removal was delayed due to his continued refusals to cooperate in securing travel documents.  *Id.*  Respondent asserts that Petitioner has continued the uncooperative behavior that prompted this court's dismissal of the previous petition.  Paper No. 3 at p. 2.  Petitioner has not refuted that assertion.  A review of the facts, as previously found by this court, supports the conclusion that Petitioner is not entitled to the relief he seeks.

Petitioner was arrested by government agents on November 8, 2001, for extorting money from the owner of a Baltimore, Maryland pizzeria by representing himself to be an agent of the

---

[1]   A final order of removal was issued after Petitioner was found to be a deportable alien by an Immigration judge. *Id.*

former Immigration and Naturalization Service ("INS"). *Candela,* Civil Action No. WMN-05-281, Paper No. 5, p. 2.   When arrested, he claimed: that his name was Salvatore Candela; that he was a United States citizen born in Chicago, Illinois on June 12, 1959; that his Sicilian father and Thai mother were both deceased; that he moved to Thailand at age 2, moved back to the United States at age 8, and resided in New York City until age 32; and that thereafter he lived in San Francisco, California, Patterson, New Jersey, Miami Beach, Florida, and, finally, Baltimore, Maryland.  *Id*.

Petitioner did not have any form of identification on his person or at his apartment at the time of his arrest.  To compound the "mystery" surrounding Petitioners's background, he indicated that he had never: attended school; registered for Selective Service; possessed a driver's license; or filed an income tax return in the United States.  *Id*.  In addition, Petitioner could not answer the most rudimentary religious, civics, and residential questions, information that should have been known to a man who claimed he was Catholic and had lived in New York City for over 24 years.[2]  *Id*.

According to Respondent, the United States Magistrate and District Judges who presided over Petitioner's custody hearing and criminal proceeding found his avowed biography incredible.[3]  *Id*. at Paper No. 3, Ex. B & E.  On May 3, 2002, Petitioner was convicted of extortion, in violation of 18 U.S.C. §§ 872 & 2, and sentenced to a 15-month term of

---

[2]   Respondent indicates that when later housed in immigration custody in October of 2003, Petitioner contacted his counselor and stated that he was a Muslim and wished to be provided with a copy of the Quran. *Candela,* Civil Action No. WMN-05-281 at Paper No. 3, Ex. M.

[3]   During the course of the pre-sentence investigation, Petitioner changed his alleged birth date to June 11, 1959.  *Id*. at Paper No. 3, Ex. D.

imprisonment with 1 year of supervised release and restitution in the amount of $2,485.00. *Id*. at Paper No. 3, Ex. C.

The record further reveals that in October of 1996, Petitioner was arrested for taking $1,550.00 from a police informant while posing as an INS agent. *Id*., Ex. F. He used the name of Roger David Akrem and claimed to have been born in New York on June 6, 1965. *Id*. Petitioner's victim in his federal extortion case, an Indian national, claimed that Petitioner spoke in the Punjabi language during all six meetings and voiced his belief that Petitioner was probably born in Pakistan because of certain aspects of his dialect. *Id*., Ex. G. Further, when interviewed by the INS in June of 2002, Rashpal Singh, a local Baltimore cab driver, indicated that: Petitioner only spoke in the Punjabi language when meeting with Singh; that Petitioner informed Singh that his name was Akrem, a Muslim name, and that he was from Pakistan; and that Singh was almost certain that Petitioner was from Pakistan because of Petitioner's accent. *Id*., Ex. H.

On December 16, 2002, Petitioner was taken into INS custody following his release from the U.S. Bureau of Prisons. He was served with a Notice to Appear and charged as being removable from the United States as: an alien who is present in the United States without having been inspected and admitted or paroled, in violation of INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i); an alien who has been convicted of a crime involving moral turpitude, in violation of INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I); and an alien who has falsely represented himself to be a citizen of the United States, in violation of INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii). *Id*. at Paper No. 3, Ex. I.

Respondent indicates that in an attempt to verify Petitioner's biographical claims, searches were conducted in March of 2003, utilizing a national database and the Cook County,

Illinois Bureau of Vital Statistics.  *Id*., at  Exs. J & K.  The searches revealed no record verifying Petitioner's claims.

Subsequent to an evidentiary hearing, on September 4, 2003, Immigration Judge Lisa Dornell found that Petitioner was not a citizen of the United States, but was a citizen of an unknown country.  *Id*. at  Ex. L.  The Judge found Petitioner removable under all charges and ordered him deported to Pakistan or, in the alternative, to India.  *Id*.  The decision was not appealed.

Respondent states that since September 29, 2003, the following actions have occurred:

- An ICE informant was placed in Petitioner's cell;

- ICE made a written request to the Embassy of Pakistan for issuance of a travel document on October 6, 2003;[4]

- ICE forwarded Petitioner's biographic information, as obtained by the informant, to the Pakistan Embassy;

- ICE submitted another formal request to the Embassy of Pakistan for issuance of a travel document on January 31, 2005;

- On six separate occasions from February of 2004 to March of 2005, Petitioner has been served with notices warning him of his legal obligation to cooperate with efforts to secure travel documents;

- On February 17, 2005, Petitioner was telephonically interviewed by a consular officer of the Embassy of Pakistan.  Petitioner continued to maintain that he is not a citizen of Pakistan;

- On March 4, 2005, Petitioner again spoke with a consular officer of the Embassy

---

[4]     Respondent claims that on October 6, 2003, information was provided by an ICE informant regarding Petitioner's Pakistani nationality, name, birth date, family history, point of entry, and motivations for failing to provide truthful information to immigration authorities. *Id*. at Paper No. 3, Ex. N.  According to the record, Petitioner also told the informant that if removed he would travel to Peshawar, Pakistan to meet a member of Al Qaida and that he would reenter the United States through Canada.  *Id*. at Ex. O.

>   of Pakistan and again insisted that he is a United States citizen and not a citizen of Pakistan; and
>
> • Travel documents have not been issued by the government of Pakistan because of Petitioner's denial that he is a Pakistani citizen and because consular officers were "not in a position" to issue the documents based upon the information provided by the ICE informant.

*Id.* at Paper No. 3, Exs. N, & P-V.

In light of the unchanged circumstances of this case, Petitioner has presented no basis upon which this court could grant relief. As noted by this court in it's previous decision:

> Petitioner is the sole cause of his continued detention. Each and every time Petitioner has come into contact with government agents, law enforcement officers, and the courts, he has provided conflicting, unsupported, implausible biographical information regarding his nationality, birth date, religion, family, and residences. ICE has made countless attempts to corroborate Petitioner's story; all unsuccessful. Information provided to ICE from no less than three independent sources suggests that Petitioner is from the Punjab area of Pakistan. The reality is, however, that with Petitioner's continued, unsubstantiated claim that he is not a national of Pakistan and is a citizen of the United States due to his birth, Pakistani officials will not issue travel documents.

*Id.* at Paper No. 5, p. 6. In spite of his refusal to cooperate, Petitioner seeks the protections established by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). That protection, however, is unavailable to persons such as Petitioner who have caused the delay in their removal from this country and, concomitantly, lengthened the time of their detention. Under *Zadvydas* detention pending removal from this country is presumptively reasonable for six months. The burden of proving that removal is not likely to occur in the reasonably foreseeable future is Petitioner's. Upon a showing that removal is not likely to occur, Respondent must produce evidence to rebut that showing. *Zadvydas*, 533 U.S. at 701 ("once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future, the Government must respond with evidence sufficient to rebut that showing."). Petitioner cannot establish that his removal is not likely to occur because his refusal to cooperate with authorities makes it impossible to discern whether or not his repatriation to his native country is feasible.  In short, *Zadvydas* protects aliens detained pending removal whom, through no fault of their own, are unlikely to be removed in the foreseeable future.  Petitioner is not an individual entitled to such protection.

      Accordingly, by separate order which follows, the Petition for Writ of Habeas Corpus shall be dismissed.

                                         /s/

<u>September 26, 2005</u>                    _____
Date                                      William M. Nickerson
                                            Senior United States District Judge